IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RENE AGUILAR, B69509, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:14-cv-0344-MJR-RJD |
| | ) | |
| RANDY DAVIS, | ) | |
| LARUE LOVE,[1] | ) | |
| TODD WALSH, and | ) | |
| JEFF MOORE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

REAGAN, Chief Judge:

### I.      Introduction

This is a prisoner civil rights lawsuit involving events that occurred at Vienna Correctional Center ("Vienna"), a facility within the Illinois Department of Corrections ("IDOC") prison system. Plaintiff Rene Aguilar was an inmate at Vienna (he is now out on parole) and the Defendants are IDOC employees. Aguilar states in his complaint that he was seriously injured on October 19, 2012, after he fell off the back of a moving dump truck while on work duty at Vienna. Aguilar asserts that Defendants Todd Walsh (the IDOC employee driving the dump truck) and Jeff Moore (the prison warehouse supervisor) were deliberately indifferent to his safety in violation of the Eighth

---

[1] Defendants Davis and Love were dismissed without prejudice in the Court's preliminary screening order on April 9, 2014 (Doc. 6).

Amendment. The Defendants moved for summary judgment, and the Plaintiff responded. The Motion for Summary Judgment is now before the Court.

## II.    Facts

Aguilar entered IDOC custody in 2012 and was transferred to Vienna on May 30th of that year (Aguilar deposition, Doc. 47-1, pp. 7-8). On September 5, 2012, Vienna prison officials assigned Aguilar to work in the "general store area" (prison warehouse) (*Id.* at p. 13). In that position Aguilar performed tasks such as loading and unloading trucks, moving pallets of food items and sweeping the floor (*Id.*). Defendant Todd Walsh was Aguilar's immediate supervisor and Defendant Jeff Moore was the head warehouse supervisor (*Id.*).

On the morning of October 19, 2012, Walsh instructed Aguilar and the other prison workers in the warehouse to load up a dump truck with pallets of food items (*Id.* at p. 14; Piper declaration, Doc. 52-1, p. 2). After vendors delivered supplies (food, toiletries and so forth) to the warehouse, prison officials and inmate workers would distribute the items throughout the facility (Aguilar deposition, Doc. 47-1, p. 13). This task primarily involved transporting food items from the warehouse to "dietary" (the prison chow hall) (*Id.* at p. 15). The Vienna chow hall is located above the warehouse in the same building (*Id.* at p. 17). However, the building elevator had been out of service since July of 2012 (Walsh deposition, Doc. 47-2, p. 47). So, in order to avoid dragging pallets of food up a flight of stairs, prisoners were directed to load the food items from

the warehouse onto a dump truck (*Id*.). The dump truck was then driven around to the front of the building and unloaded on the same level as the chow hall (*Id*.). The drive is approximately 200 to 250 yards in total over asphalt and concrete roads (*Id*. at p. 56).

Defendants Moore and Walsh directly supervised the loading of the dump truck (Aguilar deposition, Doc. 47-1, p. 19; Piper declaration, Doc. 52-1, p. 1-2). After the truck was loaded, Walsh got into the cab. Moore then directed Aguilar to ride along in the back of the truck (*Id*.). Aguilar hopped into the truck along with two other inmate workers named Piper and Swan (*Id*.). Moore stayed back in his office as the truck drove off (Aguilar deposition, Doc. 47-1, p. 21). While Walsh drove the truck, the prisoners in the back held down the pallets and crates. (*Id*.; Piper declaration, Doc. 52-1, p. 2). There was no tailgate on the back of the dump truck; the prisoners were not wearing any seatbelts or safety equipment; and, the food containers were not tied down (Aguilar deposition, Doc. 47-1, p. 20; Piper declaration, Doc. 52-1, p. 2).

According to Piper, on previous dump truck trips product had fallen out of the truck, which angered Moore and Walsh (Piper declaration, Doc. 52-1, p. 2). Piper and Aguilar both described the back of the truck as lacking much space for the inmate workers, or sufficient equipment to tie down or secure the contents of the truck (Piper declaration, Doc. 52-1, p.2; Aguilar deposition, Doc. 47-1, p. 20-22). Aguilar did not feel that he had a choice about whether or not to ride in the back of the dump truck because Moore had pointed to him and said "get this out of here" (referring to the contents of

the truck) and then asked which other inmates were going to accompany Aguilar in the truck bed (Aguilar deposition, Doc. 47-1, p. 27-29). Piper indicated that if the inmates did not comply with directions from Vienna officers they would be sent to solitary confinement or would suffer other adverse consequences (*Id.*, p. 3).

Aside from lacking a rear gate, the dump truck was also missing the driver's side mirror (Walsh deposition, Doc. 47-2, p. 45) and it was raining that day (Aguilar deposition, Doc. 47-1, p. 9). As the truck proceeded around the building they began to drive up a hill (*Id.*). As the vehicle ascended the hill, Walsh downshifted the truck (*Id.*; Piper declaration, 52-1, p. 3). The downshift jerked the vehicle, causing Aguilar to lose his balance and fall off the back of the truck (Aguilar deposition, Doc. 47-1, p. 9; Piper declaration, Doc. 52-1, p. 3).

As Aguilar lay on the ground he felt a pain in his back (Aguilar deposition, Doc. 52-1, p. 9). Walsh did not have a functioning radio with him (the batteries were dead), so he directed Piper to run inside for assistance (*Id.*).[2] Prison health care unit employees arrived shortly thereafter and placed Aguilar on a stretcher (*Id.*). After arriving at the

---

[2] Walsh filed an incident report later that day. The report states:

On above date and time [October 19, 2012 at approximately 9:20 AM], this R/O was delivering milk, juice, and waffles to the front of the kitchen in the back of a 2 ton dump truck at approximately 5 MPH, due to the elevator being broken since July 16th. Since that time, this has been the normal procedure for all food orders to the kitchen from the general store warehouse. As I drove behind the chapel, I felt a jerk and stopped immediately. At this time, I got out of the truck and observed I/M Aguilar B69509 laying on the ground approximately 10-15 feet behind the truck. I assume he fell out of the truck, but could not see behind the truck, due to a mirror being broken. I approached I/M Aguilar B69509 to ask if he was OK, and he groaned in pain. I went to call a Code 3 (Medical Emergency), but my battery did not have enough power to transmit. I then sent I/M Piper B82212 to the kitchen, to get another staff member to call the code, while I stayed with I/M Aguilar B69509. Within approximately 1-20 minutes, Lt Campbell arrived on scene and called a Code 3, and took charge of the incident.

(Walsh deposition, exhibit, Doc. 47-2, p. 106).

health care unit, Dr. Santos examined Aguilar and ordered that he be taken by ambulance to an outside hospital for treatment (Aguilar deposition, Doc. 47-1, p. 10). Aguilar was transported to Heartland Regional Medical Center and later diagnosed with a compression fracture in his T12 vertebrae. (*Id*.). Aguilar's back started to improve approximately a year after the injury occurred but he stated at his deposition that he continues to experience occasional back pain (*Id*., p. 11).

### III.    Procedural Posture

On March 17, 2014, Plaintiff filed suit against Defendants Randy Davis, Larue Love, Todd Walsh, and Jeff Moore for injuries he sustained while working as an inmate at Vienna. The Court screened his initial Complaint pursuant to 28 U.S.C. § 1915A and dismissed Defendants Davis and Love (Doc. 6). On September 15, 2015, the Court approved the appointment of counsel for the Plaintiff, and on October 6, 2015, counsel entered an appearance (Dkt. entry 25; Doc. 28). The case proceeded through discovery.

This matter is now before the Court for consideration of the Defendants' Motion for Summary Judgment (Doc. 46), and the Plaintiff's response opposing summary judgment (Doc. 52). In support of summary judgment, the Defendants argue that the Plaintiff cannot show they were actually aware of a risk to his safety or that they acted in deliberate indifference to such a risk. Additionally, they argue that they are entitled to qualified immunity, because their actions did not run afoul of a clearly established right.

In response, Plaintiff argues that there is a genuine dispute of material fact as to whether or not the work conditions were unsafe and whether or not the Defendants knew of said conditions (Doc. 52 at 9-14). In support of his response, the Plaintiff agrees with many of the Defendants' undisputed facts, but also supplements additional facts via the sworn declaration of a fellow inmate (Piper) (Doc. 52-1). Plaintiff also argues against qualified immunity on the premise that he need not identify a specific factually similar case delineating the right he claims was violated, so long as the violation is so obvious in light of existing law that a reasonable person would have known the conduct to be unlawful (Doc. 52 at 17-18)..

## IV.    Legal Analysis

The Defendants now seek summary judgment. Rule 56(a) of the Federal Rules of Civil Procedure states in part, "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When presented with a motion for summary judgment, "the court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.,* **24 F.3d 918, 920 (7th Cir. 1994).** The facts and all reasonable inferences are to be drawn in favor of the nonmoving party. *Kasten v. Saint-Gobain Performance Plastics Corp.,* **703 F.3d 966, 972 (7th Cir. 2012).** Summary judgment shall

be denied "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986).**

Aguilar proceeds on a single claim that Defendants Moore and Walsh were deliberately indifferent to a substantial risk of serious harm, thereby violating his Eighth Amendment rights. The Eighth Amendment to the Constitution prohibits the infliction of cruel and unusual punishment.[3] The Supreme Court has expanded on the original language of the Eighth Amendment to hold that "[a] prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment**." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (internal quote omitted).** To establish an Eighth Amendment claim the prisoner must therefore demonstrate two components; (1) that he or she was subjected to an objectively serious deprivation and (2) that defendant prison officials were "deliberately indifferent" to the deprivation. *Id.* **at 834.**

There is "[n]o static test" for determining when a prisoner's conditions of confinement are so severe that the Eighth Amendment is violated. *Rhodes v. Chapman*, **452 U.S. 337, 346 (1981).** At a minimum, prisoners are entitled to basic shelter, sanitation, clothing and medical treatment, or in other words; "the minimal civilized measure of life's necessities." *Id.* **at 347.** Moreover, "[f]or a claim … based on a failure to

---

[3] When the Eighth Amendment was initially enacted, the protections afforded by it were only applicable to prisoners incarcerated by the federal government. The Supreme Court later held that prisoners in state custody shall also be afforded the rights provided in the Eighth Amendment through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 667 (1962).

prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

Specifically in the context of an inmate performing labor in the prison setting, the Eighth Amendment "forbids knowingly compelling an inmate to perform labor that is beyond the inmate's strength, dangerous to his or her life or health, or unduly painful." *Smith v. Peters*, 631 F.3d 418, 420 (7th Cir. 2011) (quoting *Ambrose v. Young*, 474 F.3d 1070, 1075 (8th Cir. 2007). The Seventh Circuit has held that conditions of work potentially violate this prohibition in a number of circumstances, such as where an inmate was forced to work outside in winter temperatures without gloves, *Smith*, 631 F.3d at 420-21, and where an inmate was forced to work on a live wire without proper protective gear, *Hall v. Bennett*, 379 F.3d 462, 465 (7th Cir. 2004). What is more, the *Hall* Court noted that "a jury could reasonably infer that the defendants, because of their respective positions …were aware of the obviousness of the risk and knew of the necessity of wearing protective gloves when working on live wires carrying elevated voltages." *Hall*, 379 F.3d at 465.

To establish an Eighth Amendment claim the plaintiff must also demonstrate that the defendants acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The state of mind component is satisfied when the defendants acted with "deliberate indifference to inmate health or safety." *Id.* This is a less demanding standard than purposeful, but it requires more than ordinary negligence. *Duckworth v.*

*Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008) ("the Eighth Amendment does not codify common law torts"). The Seventh Circuit noted in a recent *en banc* opinion in an inmate's Eighth Amendment medical treatment case that:

> Even objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it *should* be known—is insufficient to make out a claim. *Farmer*, 511 U.S. at 836–38. Instead, the Supreme Court has instructed us that a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm. *Id.* at 837. Officials can avoid liability by proving they were unaware even of an obvious risk to inmate health or safety. *Id.* at 844.

*Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis in original). By contrast, the Seventh Circuit has also held that "[w]hile a jury is not required to infer actual knowledge from the conspicuous nature of a risk, it is allowed to do so." *Hayley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996). "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* (quoting *Farmer*, 114 S.Ct. at 1981).

The Defendants presently argue that they are entitled to summary judgment because no Eighth Amendment violation occurred or, alternatively, that they are entitled to qualified immunity. The Court will begin with an analysis of the Eighth Amendment because the availability of qualified immunity also turns in part on the existence of a clearly established right, such as an Eighth Amendment right.

As to the objective danger present, the Court finds that, at minimum, there is a material question of fact regarding the existence of a dangerous working condition.

Common sense dictates that riding in the back of an open truck, while the truck is moving, is risky. The riskiness of this particular situation was exacerbated by the weather conditions, and the fact that the inmates were standing and attempting to secure loose pallets or other large objects. Taking the facts in the light most favorable to the Plaintiff, Piper also declared that on past trips from the warehouse to the chow hall pallets and items fell out of the back of the truck. This problem affirms the notion that the situation was potentially dangerous.

Moving to the subjective prong, Piper's declaration also supports the notion that the Defendants were on notice about the riskiness of the task because Piper stated that Moore and Walsh chastised the inmates in the past when items fell out of the truck. Common sense and Piper's declaration about past issues with the truck are enough for reasonable jurors to infer that the Defendants had actual knowledge of the dangerous condition posed by the truck.

The Court is mindful that there is not extensive precedent on the issue of work conditions in the prison setting, or the overlap of the Eighth Amendment with work conditions, but the Court finds that this case presents enough of a material legal and factual controversy to warrant allowing jurors to pass on the issue. Whether the truck posed a sufficiently dangerous condition, and whether the Defendants had sufficient knowledge of that danger to constitute actual subjective knowledge for purposes of the Eighth Amendment will be the core factual issues for the jurors.

Turning to the issue of qualified immunity, the Court finds that though the decision is close, the Defendants have not demonstrated that they are entitled to qualified immunity at this juncture. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, **136 S.Ct. 305, 308 (2015) (internal cite and quote omitted).** The doctrine provides "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, **472 U.S. 511, 526 (1985).**

In determining whether a defendant is entitled to qualified immunity, courts apply a two-pronged analysis. The first question is; "whether the plaintiff suffered a deprivation of a constitutional or statutory right." *Taylor v. Barkes*, **135 S.Ct. 2042, 2044 (2015).** The second question is whether the constitutional right was "clearly established" at the time the wrongful conduct is alleged to have occurred. *Id.* "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* Additionally, the Supreme Court has repeatedly told lower courts not to define clearly established law "at a high level of generality" and that "clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, **2017 WL 69170, \*1, \*4, \_\_\_ S.Ct. \_\_\_ (Jan. 9, 2017)**; *Mullenix*, **136 S.Ct. at 308 (internal cite and quote omitted, emphasis in original).**

Recently, the Court cautioned that defining a "clearly established right" broadly would allow plaintiffs to "convert the rule of qualified immunity…into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *See White,* **2017 WL 69170 at \*4 (internal citations omitted).** Furthermore, the Supreme Court held in *Pearson v. Callahan* that the two prongs of the qualified immunity analysis may be addressed in either order. **555 U.S. 223, 237 (2009) ("There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right").**

Here, as discussed in the Eighth Amendment analysis above, the Plaintiff has identified a potential violation of his rights under the Eighth Amendment, so there is a genuine dispute as to the first prong of the qualified immunity analysis. The second prong is a closer call. As was mentioned above, there is not a large body of Eighth Amendment precedent regarding prison workplace safety. The Court is acutely aware of the Supreme Court's recent caution that rights should not be defined at such a high level of generality that qualified immunity is completely eviscerated. However, assuming arguendo that there is a right for prison workers to be safe from dangerous conditions in the workplace, the Court does not find that classifying that right as clearly established is such a generality that it completely eviscerates qualified immunity.

A hypothetical is helpful to demonstrate how taking this right as clearly established does not eliminate all grounds for qualified immunity. Taking the clearly

established Eighth Amendment right as a right to a workplace free of unreasonable danger or risk to life does not complete eviscerate qualified immunity for prison employers. Consider the exact situation the Plaintiff faced. The prison elevator was broken, so the institution needed to find an alternative way to transport items from the basement to the first floor of the building. They resolved to do so by placing the items in a dump truck for transit from the basement warehouse to the first floor. Inmates were instructed to ride in the back of the open truck, with the purported obligation of securing the cargo. A somewhat safer modification could have been to have the inmates merely watch the contents of the truck and shout out for the driver to stop if something came unsecured, rather than requiring the inmates to physically restrain items in the back of an open moving vehicle. Additionally, the items could have been secured in even the most rudimentary of ways, using rope or canvas tow straps. These minor changes to the process still could have posed danger, but may have posed measurably less danger than the scenario that panned out where inmates acted as human restraints on the truck cargo. The employers who provided restraints for the back of the truck could easily argue that they provided a reasonably safe workplace, and thus they did not violate a clearly established right. By contrast, the Defendants here face a harder task of establishing qualified immunity where the working conditions were plainly risky. Under this hypothetical scenario, there were working conditions under which the

prison defendants could have claimed qualified immunity—if for example they had employed ropes or straps to secure goods.

At bottom, the Court is denying summary judgment because it finds that the legal and factual matters in dispute leave grounds for reasonable jurors to differ as to potential liabilities afoot. Aguilar was ordered to ride in the back of an open truck with unsecured cargo for approximately 250 yards. It was also raining at the time and part of the journey required the truck to go up a hill and around a corner. Dangerous work conditions can constitute an Eighth Amendment violation. *See Bratchett v. Braxton Envtl. Servs. Corp.*, **564 F. App'x 229, 232 (7th Cir. 2014) (genuine dispute of material fact existed as to prisoner's Eighth Amendment claim where prisoner's index finger was severed in recycling machinery, when other inmates had also suffered injuries, including a broken arm and severed fingers);** *Smith*, **631 F.3d at 420 (prisoner stated Eighth Amendment claim after being ordered to split wood outside in freezing temperatures without proper protective gear);** *Hall*, **379 F.3d at 465 (genuine dispute of material fact existed as to prisoner's Eighth Amendment claim where prisoner suffered severe electrical shock after being ordered to perform electrical work on live wires, despite not possessing the proper protective equipment or having any formal electrical training);** *Wallis v. Baldwin*, **70 F.3d 1074, 1075 (9th Cir. 1995) (genuine dispute of material fact existed where prisoner forced to remove asbestos using simple face mask, normal prison clothes and cotton gloves);** *Fruit v. Norris*, **905 F.2d**

**1147, 1148 (8th Cir. 1990) (prisoners stated Eighth Amendment claim after being forced to work in a raw sewage well pump station in 125 degree temperatures without proper safety equipment).** Accordingly, the Court finds that the Defendants are not entitled to qualified immunity at this juncture.

V.      **Pending Motion**

The Court is in receipt the Defendants unopposed Motion to Continue the Trial Date (Doc. 54).  The Court understands, as is set forth in the Motion to Continue, that the parties were awaiting a ruling on their dispositive summary judgment pleadings until the eve of trial.  However, the undersigned adheres to a firm trial schedule, and this case is one that the undersigned inherited from another judge in June 2016.  At that time, the case had been pending for more than two years, so the case was scheduled for the earliest possible setting in this Court's congested docket to expedite resolution.  The Court hereby **DENIES** the requested extension because the case has been pending for nearly three years at this point, and rescheduling the trial before the undersigned could result in further delays.  However, counsel are free to consent to trial before the Magistrate Judge assigned to the case, as the Magistrate Judges of this District (who have no criminal trials and far fewer civil trials) enjoy a much more flexible docket and can accommodate joint (or unopposed) motions to continue trial dates.  Consent forms can          be          found          at          the          Court's          website          at

http://www.ilsd.uscourts.gov/Forms/Consenttomag.pdf.   (Adverse consequences will not result from any party withholding consent.)

VI.    **Conclusion**

The Motion for Summary Judgment filed by Defendants Todd Walsh and Jeff Moore is hereby **DENIED**. The case shall proceed against Defendants Walsh and Moore on the sole Eighth Amendment count.

The Motion to Continue filed by Defendants is hereby **DENIED**.

**IT IS SO ORDERED.**

DATED: January 18, 2017

<u>*s/ Michael J. Reagan*</u>
Michael J. Reagan
United States District Judge